Opinion
SAETA, J.
This case involves the legality of giving a defendant credit against a mandatory jail term for time spent in a rehabilitation facility as a result of a release on own recognizance. We have concluded that such credit was properly given.
On November 15, 1978, defendant was charged in a two-count complaint with violating, in count I, Health and Safety Code, section 11550 (use or under the influence of an opiate) and, in count II, Business and Professions Code section 4143, subdivision (a) (possession of a hypodermic needle and syringe). Defendant was arraigned and entered a not guilty plea. The matter was set for trial on February 28, 1979. On that date defendant changed her plea to guilty to count I and count II was dismissed. The case was continued for sentence to June 1, 1979. The reporter’s transcript shows an indicated disposition was given, as follows: probation would be imposed with a condition of 90 days in jail and credit for time served in á rehabilitation facility. Health and Safety Code, section 11550 (hereafter § 11550) mandates service of 90 days in jail either outright or as a condition of probation.[1]
*Supp. 4 The docket indicates that defendant was advised and understood that the People might appeal the indicated sentence and that if the appellate court reversed the sentence defendant would be permitted to withdraw her plea and go to trial or let the plea stand and serve 90 days in jail in addition to the time she spent in the rehabilitation facility. The People opposed the indicated sentence.
On May 15, 1979, on petition of the People, the superior court issued an alternative writ of mandate commanding the trial court to either vacate its order of February 28,- 1979, and sentence defendant to 90 days in jail without postconviction credit for time served in a drug rehabilitation facility, or to show cause on May 23 why the court should not so order.
Prior to the return date on the alternative writ, on May 21, 1979, the case was advanced on the trial court’s calendar from June 1 and defendant moved to withdraw her guilty plea and enter a not guilty plea and be released on her own recognizance (O/R) on condition that she enter a custodial drug treatment program and remain there until further court order.[2] There was no objection by the People and the motion was granted. Defendant was released O/R on condition that she enter a drug treatment facility and not leave without court order. The court was to be notified within 24 hours if défendant left the program. The case was reset for trial on July 30.
The next day, the People, having second thoughts, moved to vacate and/or stay the order permitting defendant to withdraw her plea. The *Supp. 5 court stated that it was without power to grant such a motion. No grounds or authority were advanced by the People to vacate the previous order. That order was properly grounded on the court’s promise of February 28, 1979. Not only had the deputy city attorney in court on May 21, 1979, acquiesced in the withdrawal of the plea, a member of the appellate section of the city attorney’s office had stated to defense counsel that there was no objection to the withdrawal of the plea and setting the case for trial. In addition, the prosecutor stated, that the May 2Í order did not violate the terms of the alternative writ. On May 22 the only real objection was the setting of the trial on July 30, whereupon the court reset the case for July 16.
The People again petitioned for writ relief—this time to order the trial court to vacate its order of May 21 postponing the trial to July 16. (Actually the setting of July 16 came in the order of May 22, not May 21.) The writ was denied on June 26 on the ground it was premature.
Defendant failed to appear for trial on July 16 and her O/R release was revoked and a bench warrant issued. O/R was reinstated on July 18 when defendant appeared and the matter was trailed for trial to July 20. On July 20 defendant again changed her plea and the court made the following findings: (1) Impact House was a custodial rehabilitation facility within the terms of Penal Code section 2900.5 (hereafter § 2900.5);
(2) Custody in that facility was attributable to the present offense; and
(3) The facility was custodial based on the testimony of a counselor from Impact House.
Defendant entered a. plea of nolo contendré to count I; count II was again dismissed on the motion of the People. Defendant was sentenced to 180 days in county jail. Execution of sentence was suspended and she was placed on probation for 24 months on condition that she serve 90 days in the county jail. She was then given credit for 68 days presentence time served plus 22 days good time/work time based on her confinement in Impact House. She was further ordered to complete a six- to nine-month program in that facility as a condition of probation. The People appeal the granting of credit for time served as an order made after sentence. (People v. Belton (1978) 84 Cal.App.3d Supp. 23, 26 [149 Cal.Rptr. 231].
*Supp. 6 The analysis of the issue on appeal centers on the following questions: 1. Was Impact House a custodial facility within the terms of section 2900.5, subdivision (a)?[3]
2. Was defendant’s stay in Impact House attributable to proceedings related to the same conduct for which she had been convicted within section 2900.5, subdivision (b)?[4] and;
3. Is section 2900.5 in conflict with section 11550? Our answers to these three questions are: Yes, Yes, and No, respectively.
1. The court’s finding that Impact House constituted a custodial residential institution for purposes of section 2900.5, subdivision (a) was supported by substantial evidence. A similar facility was found to qualify for credit in People v. Rodgers (1978) 79 Cal.App.3d 26, 30-33 [144 Cal.Rptr. 602]; see also In re Wolfenbarger (1977) 76 Cal.App.3d 201, 205-206 [142 Cal.Rptr. 745].
2. The applicability of section 2900.5 to credit for time served in a foreign jurisdiction was discussed in In re Watson (1977) 19 Cal.3d 646 [139 Cal.Rptr. 609, 566 P.2d 243]. There the court stated that “[t]he crucial element of the statute is not where or under what conditions the defendant has been deprived of his liberty but rather whether the custody to which he has been subjected ‘is attributable to charges arising from the same criminal act or acts for which the defendant has been *Supp. 7 convicted.’ (§ 2900.5, subd. (b).)” (Ibid at p. 651.) This was further elaborated in In re Rojas (1979) 23 Cal.3d 152, 155-156 [151 Cal.Rptr. 649, 588 P.2d 789], wherein the court stated “. .. a defendant is not to be given credit for time spent in custody if during the same period he is already serving a term of incarceration.” (1) In the present case, defendant was not in custody on any other offense, so her time in Impact House could only be attributable to the present charge. Even though defendant accepted placement in Impact House, she was there pursuant to a court order stemming directly from the criminal proceedings.
This leads to a consideration of the legality of the order that defendant be committed to a drug rehabilitation facility as a condition of her release upon her O/R. The propriety of one custody order in an O/R release context was addressed in In re Noland (1978) 78 Cal.App.3d 161 [144 Cal.Rptr. 111]. In that case an O/R was terminated 10 days before trial even though the defendánt had not failed to make any appearance. The court construed Penal Code sections 1318.4 and 1318.6 to preclude custody orders terminating O/R releases unless the court made a finding, in open court, that the defendant had failed to appear or had violated any condition of the order releasing him O/R or that there had been a change of circumstances which increased the risk of failure to appear or that additional facts had been presented which were not known at the time of the original order releasing the defendant (Id. at pp. 164-166.
The facts of our case differ from those in Noland. Here the O/R release at its inception was conditioned on defendant’s staying in Impact House. This was an original condition, not the Noland situation of a change in conditions based on no new circumstances. We see nothing wrong with imposing the Impact House confinement as a condition of an O/R release. No case has been cited to us that would forbid such a condition. Restricting an O/R release in this manner was well within the discretion of the trial judge, especially here where he was dealing with a possible narcotic addict. Tailoring an O/R release to the needs and situation of the individual defendant is within the power of the trial court.
Further, since neither the People nor defendant objected to the condition and since defendant complied with the order until she entered her plea of nolo contendere, it would be unfair to hold that her stay in Im *Supp. 8 pact House was not attributable to either the pending charges or an order of the court.
3. Section 11550, the text of which appears in footnote 1, requires a minimum of 90 days confinement in county jail. In People v. Belton (1978) 84 Cal.App.3d Supp. 23 [149 Cal.Rptr. 231], it was held that a defendant convicted under this section must be sentenced to at least 90 days in jail and that any sentence which did not require this as a straight sentence or condition of probation was void and beyond the power of the trial court. That court noted that one defendant raised the issue of credit for time served in a drug rehabilitation facility. However, the court did not reach that issue as it was premature and the record was inadequate. We must now decide this issue.
The mandate of section 11550 has on its face been satisfied in that defendant was sentenced to 180 days in the county jail. Sentence was suspended and she was ordered to serve 90 days in jail as a condition of probation. However, this facial compliance with section 11550 was vitiated in fact by giving defendant credit for the presentence time she had served in Impact House. This meant that defendant did not have to serve any time in jail for this offense. Former Health and Safety Code section 11721 (the predecessor to § 11550) was amended in 1954 to require that jail time be served. Since 1954 the Legislature has adopted section 2900.5 and in 1976 amended section 2900.5 equating time in a rehabilitation facility with jail time.
Two rules of statutory construction are of assistance here. “[Statutes relating to the same subject matter are to be construed together and harmonized if possible.” (County of Placer v. Aetna Cas. etc. Co. (1958) 50 Cal.2d 182, 188-189 [323 P.2d 753].) If two constructions of a penal provision are possible, we must use the one favorable to the accused. (People v. Valentine (1946) 28 Cal.2d 121, 143 [169 P.2d 1].) Applying these principles, the “jail” of section 11550 is defined in section 2900.5 as “jail,” “hospital,” “prison,” “rehabilitation facility,” etc. There is no prohibition in section 11550 to using the equivalents to jail of section 2900.5. Had defendant been sentenced to a sheriff’s road camp or work furlough facility or prison, could the People seriously argue that the mandate of section 11550 was not satisfied?
Similarly, section 2900.5 makes no exception in equating time served in rehabilitation facilities, hospitals and halfway houses with jail for *Supp. 9 mandatory-jail statutes such as section 11550, the last two paragraphs of Penal Code section 647 relating to prostitution, or Vehicle Code section 23102, subdivision (d).
Lastly, the Penal Code prescribes for misdemeanors only jail and/or fines. To read section 11550 so narrowly that only jail can qualify is to read out all meaning to section 2900.5. Our application of 2900.5 to 11550 mandatory jail time harmonizes the two sections in preference to an absurd result.
People v. Municipal Court (Gelardí) (1978) 84 Cal.App.3d 692 [149 Cal.Rptr. 30], cited by the People, does not apply to the facts of our case. There municipal court judges continued cases for periods of up to one year and then dismissed those cases purportedly pursuant to Penal Code section 1385. Here, in our case, there was no dismissal involved —defendant was sentenced on her plea—or an extended continuance for trial—the People first acquiescing in the trial date of July 30 and then obtaining an advancement to July 16. Gelardi represents a restraint on the powers of a municipal court judge to dismiss cases. It does not restrain our trial judge’s correct application of sections 11550, 2900.5 and Penal Code section 1318 et seq.
The judgment (order crediting time served) is affirmed.
Ibáñez, P. J., and Fainer, J., concurred.

Section 11550 reads as follows: “No person shall use, or be under the influence of any controlled substance which is (1) specified in subdivision (b) or (c) of Section *Supp. 4 11054, specified in paragraph (11), (12), or (17) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055 or (2) which is a narcotic drug classified in Schedule III, IV, or V, excepting when'administered by or under the direction of a person licensed by . the state to dispense, prescribe, or administer controlled substances. It shall be the burden of the defense to show that it comes within the exception. Any person convicted of violating any provision of this section is guilty of a misdemeanor and shall be sentenced to serve a term of not less than 90 days nor more than one year in the county jail. The court may place a person convicted hereunder on probation for a period not to exceed five years and shall in all cases in which probation is granted require as a condition thereof that such person be confined in the county jail for at least 90 days. In no event does the court have the power to absolve a person who violates this section from the obligation of spending at least 90 days in confinement in the county jail.”

Defendant posted bail on November 17, 1978, and was on bail until May 15, 1979. Bail was exonerated. May 23, 1979, on the filing of defendant’s O/R agreement that day.

Section 2900.5, subdivision (a) reads as follows: “In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including but not limited to any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, and including days credited to the period of confinement pursuant to Section 4019, shall be credited upon his term of imprisonment, or credited to any fine which may be imposed, at the rate of not less than thirty dollars ($30) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served. In any case where the court has imposed both a prison or jail term of imprisonment and a fine, any days to be credited to the defendant shall first be applied to the term of imprisonment imposed, and thereafter such remaining days, if any, shall be applied to the fine.”

Section 2900.5, subdivision (b) reads as follows: “(b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed.”